On the Merits.
Taliaferro, J.
The transcript contains the proceedings had in two distinct cases, one of which is an injunction suit, and the other an opposition to an application for the dative executorship of the succession of William. Bobb. Much of the evidence offered in the latter case having been introduced in the former, it was agreed by the parties that one transcript would suffice for both cases.
In the first of these cases, Ernest Merilh enjoins the execution of an order of the court condemning him to comply with the terms of adjudication to him of two hundred and twenty shares of the capital stock of The Louisiana Ice Manufacturing Company, sold at public auction *346 at the instance of the executors of William Bobb, on the twenty-seventh of October, 1874. Merilh, it appears, after purchasing the stock of the estate at this sale, declined, paying for it on the ground that the estate of Bobb was without an executor; that Widow Bobb, who had been appointed executrix, and William Bobb, executor, had become fundi officiis, from their failure to give security for the faithful discharge of their duties, which security they had been required to give by an order of court rendered upon the sworn application of A. Rochereau & Co., creditors of the estate to a large amount; that he could not safely make the payment of the sum bid by him at the sale of the stock except to one authorized to receive and give acquittance. We find from the record that the order for the executors to give security was rendered on the twenty-ninth of October, 1874; that the second sale of the stock at the folie enchére of Merilh was advertised by the auctioneer to take place on the twelfth of December following. The service of the order requiring the executors to give security, was made, as contended by the plaintiff, on the third of November following the order, so that the thirty days within which the executors were required to furnish security, expired on the third of December, and consequently the executors having failed to comply with the order, there was no executor in office on the twelfth December, the day in which the second sale was advertised to be made. It is further contended on the part of the plaintiff that he had ten days after the rendition of the judgment on the thirtieth of November, ordering him to comply with the terms of sale, within which to take a suspensive appeal, as that judgment required a specific performance, and consequently the auctioneer could not legally advertise the second sale until after the expiration of that delay. The plaintiff states in his own testimony that he was satisfied with the title to the stock, and that he liad on deposit in the Canal Bank thirty-nine hundred and five dollars, the price of the adjudication, to pay for it, and introduced in evidence his bank book to show it. He states further, that when called upon by the auctioneer to make payment, he told him he would wait ten days to make payment, as Mr. Bobb had in the mean time to give security.
In order to determine this controversy it is important to inquire whether the service of the order to give security was properly served upon Charles T. Bobb, the executor. The judge a quo decided that he was not'legally cited, and therefore he was not divested of his office, although the executrix was divested, as personal service was made upon her. Service in the case of the executor was made upon his attorney at law, the executor being at the time absent from the State.
The article 1677 of the Revised Civil Code, making it obligatory upon executors to give security in certain cases, declares that: “ It *347 shall be the duty of the judge, without further proceeding or delay, to issue his order commanding the testamentary executor to give the required security within thirty days from the service of the order. Should the testamentary executor, if present in the parish, or in his absence, his agent or his attorney at law, fail to furnish the required security within the delay allowed, it shall ipso facto work an immediate removal of the testamentary executor, and the judge shall appoint a dative testamentary executor.”
The purpose of the law seems clearly to be that in the absence of an executor who has been ordered to furnish security within thirty days, his agent or his attorney at law may provide the security for him. A service or notice of the order to his agent or his attorney at law would seem to be equivalent to notice to himself. The plaintiff, moreover, holds that notice served personally upon Mrs. Bobb, the executrix, exercising jointly with him the functions belonging to the office of executor, was sufficient notice to him; that service of the order requiring both executors to furnish secuirty, made upon one of them, present in the State, was a sufficient service of the order on both. However this may be, we think that the notice in this case made upon the attorney at law of the executor was sufficient. We think, therefore, there was error in the decree of the lower court dissolving the injunction.
The other branch of this case constitutes the opposition of Mrs. Bobb and Charles P. Bobb to the application of Pierre Crabites to be appointed dative executor of William Bobb, deceased. This application is predicated upon the assumption that the executor and executrix named in the will were divested of their offices on the third day of December, 1874, as on that day the thirty days expired within which they were ordered to furnish security, and no compliance with the order was made by them. The applicant, Crabites, filed his petition to be appointed executor on the fifth of December, 1874, alleging himself to be a member of the firm of A. Roehereau & Co., who are creditors of the estate of William Bobb in a sum exceeding fen thousand dollars. His application was opposed by the Widow Bobb and Charles P. Bobb on these grounds:
First — That opponents are the testamentary executors of the decedent.
Second — That they have not been removed from said office by operation of law or otherwise.
Third — That the order of the twenty-ninth of October, 1874, requiring them to give security, had never been served on them in the manner required by law.
Fourth — That if they should fail, when legally served, to give the security, then the succession would have to be placed in the hands of the public administrator as dative executor.
*348 Fifth — That the applicant is not a creditor of the succession, and has no right to the administration thereof, even if a creditor.
The opposition of Charles P. Bobb to the appointment of Crabites was maintained, and the application of the latter was rejected, and thereupon he appealed.
The first three grounds have been considered. The fourth, we conclude, will preclude the applicant from succeeding to the office of executor. The act of 1870, establishing the office of public administrator, section 3, provides: “That in all testate successions, when from any cause the executor can not discharge the duties of his office, the judge shall appoint the public administrator of the parish dative testamentary executor.”
This act repeals former laws on the subject, and restricts the judge in making appointments of dative testamentary executors to the public administrator. The plaintiff’s application must therefore be rejected.
It is therefore ordered that the judgment of the lower court dissolving the injunction be annulled and reversed. It is ordered that the injunction be perpetuated. It is ordered further that the judgment rendered on the opposition of Mrs. Bobb and Charles P. Bobb, to the application of P. Crabites to be appointed dative testamentary executor, so far as it decrees in favor of Charles P. Bobb, and retains him in the office of executor, be annulled and reversed, and that in other respects it be affirmed. It is further ordered that the costs in the injunction case be paid by the defendant and appellee, and the costs of the application for the office of dative testamentary executor be paid by the applicant.